**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT SIMPSON,**

                                        **Petitioner,**

                        v.                                                          **5:03-CV-691**
                                                                            **Related Criminal Action:**
**UNITED STATES OF AMERICA,**                                              **5:00-CR-373**

                                        **Respondent.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**ROBERT SIMPSON**[1]
**10347-052**
Syracuse Pavilion
701 Erie Boulevard East
Syracuse, New York 13210
Petitioner _pro se_

**OFFICE OF THE UNITED**                        **JOHN M. KATKO, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Respondent

**SCULLIN, Chief Judge**

---

[1] The Bureau of Prisons recently informed the Court that Petitioner is no longer confined at Ray Brook FCI.  Rather, he is at Syracuse Pavilion in Syracuse, New York, with a tentative release date in late November 2005.

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**[2]

On July 31, 2000, a federal grand jury indicted Petitioner Robert Simpson and charged him with various criminal acts.  *See* Action No. 00-CR-373, Dkt. No. 1 ("Indictment").  On August 3, 2000, Petitioner appeared before then-Magistrate Judge Gary L. Sharpe, at which time he was arraigned and a not guilty plea was entered on his behalf.  *See* Action No. 00-CR-373, Dkt. No. 6.  After reviewing the financial affidavit that Petitioner filed in accordance with the Criminal Justice Act in the underlying criminal matter, then-Magistrate Judge Sharpe determined that Petitioner was eligible for court-appointed counsel; therefore, he directed the Office of the Federal Public Defender for the Northern District of New York to file a Notice of Appearance on Petitioner's behalf.  *See* Action No. 00-CR-373, Dkt. No. 10.  Assistant Federal Public Defender David G. Secular, Esq. ("Mr. Secular" or "assigned counsel") thereafter entered an appearance in that criminal action on Petitioner's behalf.  *See* Action No. 00-CR-373, Dkt. No. 18.

By letter dated March 15, 2001, Mr. Secular advised Assistant United States Attorney John Katko ("AUSA Katko") that, although defense counsel wanted to "resolve" the criminal matter pending against his client, Mr. Secular was nevertheless "troubled over the requirement" that the Government had imposed in the proposed plea agreement that Petitioner plead guilty both to the narcotics conspiracy and to the § 924(c) count[3] asserted in the Indictment.  *See* Action No.

---

[2] The Court has derived the background information relating to this action from the materials that the parties submitted in conjunction with the present civil proceeding, *Simpson v. United States*, 5:03-CV-691 ("Action No. 03-CV-691"), as well as the underlying criminal action, *United States v. Sugamele*, 5:00-CR-373 ("Action No. 00-CR-373").

[3] Section 924(c) of Title 18 of the United States Code prohibits the knowing use or carrying

(continued...)

03-CV-691, Dkt. No. 21.  AUSA Katko subsequently informed Mr. Secular in a letter that,

notwithstanding Mr. Secular's concerns, the Government intended to pursue the firearms charge

against Petitioner.  *See* Action No. 03-CV-691, Dkt. No. 22.  In that letter, AUSA Katko also

requested that defense counsel inform the Government no later than March 27, 2001, whether his

client intended to enter into a plea agreement concerning the charges that the Government had

brought against him.  *See id.*  Petitioner subsequently executed a plea agreement in which he pled

guilty to Counts One and Three of the Indictment in full satisfaction of all charges brought against

him in that accusatory instrument.  *See* Action No. 00-CR-373, Dkt. No. 37 ("Plea Agreement").

In that Plea Agreement, Petitioner specifically pled guilty to (1) conspiring to distribute and

possessing with intent to distribute cocaine, cocaine base/crack cocaine and marijuana, in

violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One), and (2) knowingly using or carrying a

firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)

(Count Three).  *See* Plea Agreement at ¶ 2.  Petitioner also acknowledged that he had been

thoroughly advised of his rights to appeal his conviction and sentence, that he fully understood

such rights, but that he was, among other things, "knowingly and expressly waiv[ing] all rights,

conferred by 18 U.S.C. § 3742, to appeal any sentence of imprisonment of 180 months or less."

*See id.* at ¶ 14.[4]

---

[3](...continued)
of a firearm "during and in relation to any . . . drug trafficking crime."  18 U.S.C. § 924(c).

[4] Section 3742 of Title 18 of the United States Code authorizes a defendant to file a notice of
appeal in the district court for review of an otherwise final sentence if, among other things,
the sentence (1) was imposed in violation of law, (2) was imposed as a result of an incorrect
application of the United States Sentencing Guidelines, or (3) was greater than the sentence
specified in the applicable guideline range.  *See* 18 U.S.C. § 3742(a)(1)-(3).

On March 30, 2001, this Court presided over a hearing relating to the Plea Agreement into which Petitioner had entered with the Government. At that hearing, Petitioner indicated that he was satisfied with the advice and representation that he had received from Mr. Secular in conjunction with the criminal matter. *See* Transcript of Change of Plea, dated March 20, 2001 ("Plea Tr."), Action No. 03-CV-691, Dkt. No. 23, at 4. Petitioner thereafter acknowledged that he (1) had thoroughly reviewed the substance of the Plea Agreement with his attorney, (2) understood everything contained in that agreement, and (3) did not have any questions about anything contained within that document. *See* Plea Tr. at 5. After Mr. Secular advised the Court of the actions he had undertaken to ensure that Petitioner understood all the terms and conditions of the Plea Agreement, this Court advised Petitioner of the consequences of his pleading guilty to Counts One and Three of the Indictment. *See id.* at 5-7. The Government then placed the factual basis for the guilty plea on the record – the accuracy of which Petitioner expressly acknowledged. *See id.* at 8. This Court then specifically noted that, pursuant to the terms of his Plea Agreement, Petitioner was waiving his right to appeal any sentence of imprisonment of 180 months or less. *See id.* at 9. Since the record established that Petitioner was fully capable of knowingly and voluntarily entering his plea, this Court accepted his guilty plea to the First and Third Counts in the Indictment. *See id.* at 11-12.

On April 22, 2001, this Court signed a stipulation that permitted Mr. Secular to withdraw as Petitioner's counsel and that noted the appearance of Randel A. Scharf, Esq. ("Mr. Scharf" or "retained counsel") on Petitioner's behalf. *See* Action No. 00-CR-373, Dkt. No. 95.

On June 21, 2001, the Probation Office for the Northern District of New York prepared a Pre-Sentence Investigation Report relating to Petitioner, which, as revised on March 28, 2002,

indicated that Petitioner's base offense level for his crimes was 30.  *See* Action No. 03-CV-691, Dkt. No. 25 ("Revised PSR") at ¶ 22.[5]  That report further noted that Petitioner's total offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") should be reduced to 27 after crediting Petitioner with a two-point reduction for his acceptance of responsibility together with a one point reduction due to his timely notification to the authorities of his intention to plead guilty to the charges.  *See* Revised PSR at ¶ 30.  Since Petitioner's criminal history category was determined to be I, *see id.* at ¶ 40, that report noted that Petitioner was subject to a range of imprisonment under the Guidelines of between 70-87 months as to Count One, together with a consecutive 60-month term of imprisonment for his conviction on Count Three of the Indictment, *see id.* at ¶ 71.

By letter dated March 28, 2002, the Government filed a downward departure motion with the Court pursuant to U.S.S.G. § 5K1.1 based upon the substantial assistance that Petitioner had provided to law enforcement agents.  *See* Action No. 00-CR-373, Dkt. No. 104.  This Court thereafter sentenced Petitioner to a term of imprisonment of eighteen months on Count One, together with a consecutive, twenty-eight month term of imprisonment regarding his conviction on Count Three.  *See* Transcript of Sentencing, dated June 4, 2002 ("Sentencing Tr."), Action No. 03-CV-691, Dkt. No. 24, at 14-15.  This Court then suggested that Petitioner attempt to gain acceptance to and successfully complete the Comprehensive Residential Drug Treatment Program

---

[5] Petitioner had been incorrectly charged with – and pled guilty to – possessing with intent to distribute more than 50 grams of cocaine base/crack cocaine.  *See* Indictment, Count One; *see also* Plea Agreement at ¶ 7; Plea Tr. at 11.  However, laboratory analysis of the crack cocaine that Petitioner had sold to the confidential informant ultimately revealed that the substance weighed only 45.4 grams.  *See* Revised PSR at attached (unnumbered) 19. Therefore, the Probation Office revised the PSR so that it accurately reflected the quantity of crack cocaine attributable to Petitioner.  *See* Revised PSR at ¶ 22.

that the Bureau of Prisons ("BOP") offered. *See id.* at 15-16. Petitioner thereafter began serving his sentence at the Federal Medical Center in Devins, Massachusetts. *See* Action No. 00-CR-373, Dkt. No. 116.

Petitioner filed a Motion to Vacate, Set Aside or Correct his sentence in this District on June 3, 2003. *See* Action No. 03-CV-691, Dkt. No. 1 ("Motion to Vacate"). Petitioner thereafter filed two motions to amend his Motion to Vacate, *see* Action No. 03-CV-691, Dkt. Nos. 3, 9; however, by Order dated October 7, 2003, this Court denied both of those applications without prejudice. *See* Action No. 03-CV-691, Dkt. No. 10.

On November 24, 2003, Petitioner filed a renewed motion to amend his petition, together with supporting exhibits and a memorandum of law in support of that application. *See* Action No. 03-CV-691, Dkt. Nos. 11-13. This Court granted that request, *see* Action No. 03-CV-691, Dkt. No. 14, after which Petitioner's Amended Motion to Vacate was filed in this civil action. *See* Action No. 03-CV-691, Dkt. No. 15 ("Amended Motion to Vacate").

On June 21, 2004, the Government filed a response in opposition to Petitioner's Amended Motion to Vacate. *See* Action No. 03-CV-691, Dkt. No. 18 ("Resp. Mem."). On April 14, 2005, Petitioner filed a submission he entitled "Traverse to Government's Response, and Memorandum of Points and Authorities." *See* Action No. 03-CV-691, Dkt. No. 30 ("Traverse"). In that application, Petitioner raised numerous new claims, which he had not previously asserted in this action. *See id.* In response to that submission, the Government argued, among other things, that Petitioner's "Traverse" amounted to another motion to amend his previously amended § 2255 application and urged this Court to "exercise its discretion in this matter and put a halt to the incessant filings by [Petitioner]." *See* Action No. 03-CV-691, Dkt. No. 28.

6

## II. DISCUSSION

**A.     Traverse / Motion to Amend**

This Court first considers Respondent's claim that Petitioner's Traverse is, in fact, another application to amend his Amended Motion to Vacate.

Although Petitioner claims that his Traverse is "limited to responding to the Governments [*sic*] brief," *see* Cover Sheet to Traverse, it is clear that in this submission Petitioner not only reiterates the arguments he previously asserted in support of his Amended Motion to Vacate but also raises numerous new legal theories in support of his petition. *See, generally,* Traverse. Since that portion of Petitioner's submission is properly viewed as a request to file another amended Motion to Vacate in this action, this Court considers, as a preliminary matter, whether it should grant that application.

Petitioner dated his original Motion to Vacate on May 30, 2003, just shy of one year from the date on which the judgment of conviction which Petitioner challenges in this action was entered. *Compare* (original) Motion to Vacate at 7 *with* Action No. 00-CR-373, Dkt. No. 107. In July, 2003, Petitioner filed a motion to amend that pleading. *See* Action No. 03-CV-691, Dkt. No. 3. On September 17, 2003, before this Court had ruled on Petitioner's original motion to amend, he filed a second motion to amend his motion to vacate. *See* Action No. 03-CV-691, Dkt. No. 9. On October 7, 2003, this Court denied both of Petitioner's pending motions to amend without prejudice to Petitioner submitting a single, renewed motion to amend in this action, together with a copy of a proposed amended pleading. *See* Action No. 03-CV-691, Dkt. No. 10,

7

at 4.[6]  In that Order, this Court specifically advised Petitioner that he was required to "include all the claims he wishe[d] this Court to consider as a basis for awarding relief herein in the proposed amended pleading submitted along with" any motion to amend filed in response to the Order.  *See id.*

The following month, Petitioner filed his third motion to file an amended petition herein. *See* Action No. 03-CV-691, Dkt. No. 11.  In an Order dated February 23, 2004, this Court granted that application, *see* Action No. 03-CV-691, Dkt. No. 14, after which Petitioner's Amended Motion to Vacate was filed in this action.  Nearly **ten months after** the Government filed its opposition papers to Petitioner's Amended Motion to Vacate, *see* Resp. Mem., Petitioner submitted his Traverse.  *See* Action No. 03-CV-691, Dkt No. 30.  In that submission, Petitioner now seeks to assert the following additional claims in support of his request for habeas relief: (1) the Indictment was defective in several respects and failed to provide him with adequate notice of the charges against him, *see* Traverse at 2-5; (2) trial counsel's pretrial investigation concerning the drug evidence on which the Indictment was based was inadequate, *see id.* at 5, 23; (3) he was not aware of the sentencing consequences of his guilty plea, *see id.* at 7-8; (4) his plea was invalid because it was entered into under "mental coercion and . . . duress" arising out of the "over stated drug amount" alleged in the Indictment, *see id.* at 8; (5) the provision in the Plea Agreement that provided that he waived any appeal of a sentence of 180 months or less is "unconstitutional," *see id.* at 9-11; (6) Mr. Scharf rendered ineffective assistance by failing to

---

[6] In denying Petitioner's motions to amend without prejudice, this Court noted that neither of the motions to amend that Petitioner had filed had contained proposed amended pleadings and that he appeared to rely upon a proposed pleading attached to a motion to expand the record as the operative pleading in this civil action.  *See* Action No. 03-CV-691, Dkt. No. 10, at 3-4.

petition the Court for a psychological examination of Petitioner pursuant to 18 U.S.C. § 4247(b), *see id.* at 25; (7) Mr. Scharf's untimely request for a downward departure in Petitioner's sentence precluded this Court from properly considering that application, *see id.* at 25-26; (8) assigned counsel's improper delay in filing a motion to withdraw as counsel prevented the Probation Department from timely providing a copy of the Revised PSR to Mr. Scharf, *see id.* at 26; (9) Mr. Scharf failed to review the contents of the Revised PSR with him, *see id.*; and (10) he was not advised of his *Miranda*[7] rights at the time of his arrest, after the Indictment was returned against him, or subsequent to his incarceration, *see id.* at 41-42.

The Rules Governing § 2255 Proceedings for the United States District Courts provide, among other things, that "[t]he Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Rule 12 of the Rules Governing § 2255 Proceedings for the United States District Courts; *see also* 28 U.S.C. § 2242 at ¶ 3 (habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). Although Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be "freely given," the Second Circuit has specifically held that district courts

> may deny that leave where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive. *Littlejohn*, 271 F.3d at 363; *see also Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999) (holding that district court may deny leave to amend on grounds of futility). *This discretion safeguards against the possibility that Rule 15's amendment procedures will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse of the writ, regardless of the procedural posture of the case at the time the*

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> *motion to amend is brought*.

*Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002) (emphasis added) (footnote omitted).

Additionally, the Supreme Court has determined that undue delay on the part of the movant in bringing a motion to amend is a proper basis for denying such an application. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The chronology of the present action, as outlined above, reveals that Petitioner has unduly delayed the filing of what amounts to a *de facto* motion to amend. He waited more than twenty-two months after he commenced this action to file that application and nearly twenty-one months after he filed his original motion to amend before submitting such a request. Many of the ten claims that Petitioner now seeks to assert for the first time in this action are based on matters contained in the record. Furthermore, he could have raised all of the newly-asserted arguments in any of his prior motions to amend. Finally, as noted above, in October, 2003 – eighteen months *before* Petitioner filed the present request to amend his Motion to Vacate again – this Court *specifically advised* Petitioner that he was to include *all* the claims he wished this Court to consider as a basis for awarding relief in this action in the proposed amended pleading submitted along with his (third) motion to amend. *See* Action No. 03-CV-691, Dkt. No. 10, at 4. Although Petitioner filed a motion to amend together with a proposed pleading and other supporting documents the following month, *see* No. 03-CV-691, Dkt. Nos. 11-13, nowhere in his proposed pleading did Petitioner assert any of the claims he now seeks to assert in this action through his Traverse.

The Second Circuit has sagely noted that "[c]ourts are not obliged to entertain needless or

10

piecemeal litigation; nor should they adjudicate a motion or petition whose purpose is to vex, harass or delay." *Ching*, 298 F.3d at 179 (citing *McCleskey v. Zant*, 499 U.S. 467, 485, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991)).  Therefore, for all of the above-stated reasons, this Court denies what appears to be Petitioner's newest request to file another amended motion to vacate in this action.  Accordingly, this Court will not consider the claims that Petitioner raised for the first time in his Traverse as a basis for awarding him relief in this action, and, therefore, the Amended Motion to Vacate which Petitioner filed on February 23, 2004, is the operative pleading in this matter.

**B.     Substance of Amended Motion to Vacate**

*1. Ineffective Assistance of Counsel*

Respondent initially argues that, because Petitioner waived his right to appeal any sentence of 180 months or less as a condition of his plea agreement and because that waiver is valid and enforceable, this Court should dismiss the present action.  *See* Resp. Mem. at 9-10. Alternatively, Respondent contends that the claims that Petitioner raises in the Amended Motion to Vacate are without merit.  *See id.* at 14-33.

"[A] plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (citations omitted). Thus, an appellate waiver does not bar collateral challenges concerning the propriety of the plea agreement itself or the effectiveness of counsel in advising a defendant to enter into that plea agreement. *See, e.g.*, *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 196-97 & n.6

11

(2d Cir. 2002); *see also United States v. Monzon*, 359 F.3d 110, 118-19 (2d Cir. 2004) (waiver of

right to appeal is not enforceable when "the waiver was the result of ineffective assistance of

counsel"); *Santana v. United States*, No. 04 Civ. 1111, 2005 WL 180932, *3 (S.D.N.Y. Jan. 26,

2005) ("waivers [of appellate rights] are unenforceable where the asserted ground for challenging

the sentence is ineffective assistance of counsel in connection with plea negotiations or the

agreement itself." (citation omitted)).   This Court must therefore consider Petitioner's claim that

he received the ineffective assistance of counsel in conjunction with the underlying criminal

matter despite his appellate waiver.

In determining whether a criminal defendant received ineffective assistance of counsel,

federal district courts must consider (1) whether trial counsel's representation fell below an

objective standard of reasonableness measured by the prevailing professional norms and (2)

whether the petitioner was prejudiced by counsel's performance, i.e., whether there is a reasonable

probability that, but for counsel's performance, the outcome of the proceeding would have been

different.  *See Strickland v. Washington*, 466 U.S. 668, 688-90, 694 (1984); *United States v. Levy*,

377 F.3d 259, 264 (2d Cir. 2004) (citations omitted); *United States v. Champion,* 234 F.3d 106,

109 (2d Cir. 2000) (quotation omitted); *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir.

1998) (*per curiam*) (citations omitted).

Petitioner asserts numerous theories in support of his claim that his counsel rendered

ineffective assistance.[8]  Specifically, he argues that assigned and/or retained counsel (1) failed to

---

[8] In several of the claims that Petitioner asserted in his Amended Motion to Vacate, he failed
to specify whether he was addressing his ineffective assistance claims to the performance of
his assigned counsel or to the performance of his retained counsel.  *See*, *e.g.*, Amended
Motion to Vacate at Grounds One, Seven, and Eight.  Construing Petitioner's *pro se* pleading
(continued...)

provide the Court with information concerning Petitioner's post-offense, pre-indictment rehabilitation, *see* Amended Motion to Vacate, Ground One; (2) improperly permitted Petitioner to plead guilty to a crime he did not commit without the benefit of a binding plea agreement, *see id.*, Ground Five; (3) neglected to present evidence of Petitioner's diminished mental capacity and history of mental illness to this Court, *see id.*, Ground Six; (4) failed to advise Petitioner of his right to appeal, *see id.*, Ground Seven; (5) admitted "both aggravating and false facts" in the sentencing memorandum he filed with the Court and "dehumanize[d]" Petitioner at his sentencing by referring to "derogatory information" and "false and inflammatory matters," *see id.*, Ground Eight; and (6) labored under a conflict of interest, *see id.*, Ground Nine.

### a. Petitioner's Post-offense, Pre-indictment Rehabilitation

Petitioner initially faults counsel for failing to advise the Court of Petitioner's post-offense, pre-indictment rehabilitation in support of a downward departure motion "under 5k1.9, 5k2.0"[*sic*].[9]  *See* Amended Motion to Vacate, Ground One.[10]

However, because post-offense rehabilitation is not a factor specifically mentioned in the Guidelines, a downward departure in sentencing is warranted on that basis only if, "after

---

[8](...continued)
liberally, this Court has considered that Petitioner is asserting all such claims against both his assigned counsel and his retained counsel.

[9] There is no Section 5K1.9 of the Guidelines.  U.S.S.G. § 5K2.0 is the Policy Statement of the Sentencing Commission concerning Grounds for Upward and Downward Departures under the Guidelines.

[10] Since this claim only challenges the sentence that this Court imposed on Petitioner, it appears to be addressed solely to the performance of his retained counsel.

considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," the court concludes that the individual's post-offense rehabilitation takes the case out of the "heartland" of typical cases. *United States v. Kim*, 313 F. Supp. 2d 295, 301-02 (S.D.N.Y. 2004) (citing *Koon*, 518 U.S at 96, 116 S. Ct. 2035) (footnote omitted). In determining whether aspects of a case fall outside the heartland of cases, a sentencing court "'must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.'" *United States v. Thorn*, 317 F.3d 107, 125 (2d Cir. 2003) (quoting *Koon v. United States*, 518 U.S. 81, 98, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996)) (other citation omitted). Furthermore, "departures based on grounds not mentioned in the Guidelines [are] 'highly infrequent.'" *Koon v. United States*, 518 U.S. 81, 97 (1996) (quotation omitted); *see also United States v. Sentamu*, 212 F.3d 127, 136 (2d Cir. 2000) (citations omitted); *Kim*, 313 F. Supp. 2d at 302 (citations and footnote omitted).

To support his claim that his attorney rendered ineffective assistance in failing to move for a downward departure due to Petitioner's post-offense rehabilitation, Petitioner argues that, after he committed the subject offenses, he obtained a Class A commercial driver's license. *See* Amended Motion to Vacate, Ground One. He argues that his procurement of that license has afforded him the possibility of a "strong economic future" and constitutes grounds for a downward departure application. *See id.*

Although attainment of that license may well be admirable and prove beneficial to Petitioner in the future, it was plainly insufficient to warrant his counsel filing an application for a downward departure based upon post-offense rehabilitation. *See, e.g.*, *United States v. Middleton*, 325 F.3d 386, 389-90 (2d Cir. 2003) (petitioner's successful participation in substance abuse

14

program and continued gainful employment insufficient to warrant downward departure in

sentence); *Soares v. United States*, 66 F. Supp. 2d 391, 411 (E.D.N.Y. 1999) (§ 2255 motion

alleging ineffective assistance due to counsel's failure to seek downward departure in light of

petitioner's "procurement of steady employment, his financial assistance to his parents, and his

engagement to be married" denied; such post-offense conduct not so "extraordinary" as to warrant

a downward departure in sentence).

     The record establishes that Petitioner's post-offense conduct did not warrant a downward

departure motion on that basis at the time of his sentencing.  Therefore, it was not objectively

unreasonable for Mr. Scharf to have refrained from filing such an application.  Moreover, since

this Court would not have granted that request had Mr. Scharf filed one, retained counsel's failure

to file that application clearly did not prejudice Petitioner.


### b. Propriety of Plea Agreement

     In his fifth ground for relief, Petitioner argues, among other things, that his guilty plea was

"both involuntary and unknowingly made due to Counsel's misinformation" regarding the issue of

whether Petitioner's conduct ran afoul of § 924(c).  *See* Amended Motion to Vacate, Ground Five.

Specifically, Petitioner contends that, because his attorney failed to "accurately and persistently

argue the lack of application of the 924(c) charge," he eventually pled guilty to that charge despite

the fact that he did not violate that statute.  *See id.*  Included within this claim is Petitioner's

argument that his attorney failed to secure a binding plea agreement in the underlying criminal

case.  *See id.*

     Although not clearly stated in his Amended Motion to Vacate, Petitioner appears to argue

that the selling of a firearm in conjunction with his sale of narcotics was insufficient to satisfy the

"during and in relation to" requirement of § 924(c). *See* Amended Motion to Vacate at (attached)

6; *see also* Traverse at 11-20.  However, in *Smith v. United States*, 508 U.S. 223 (1993), the

Supreme Court squarely held that using a firearm in a guns-for-drugs trade constitutes "using" a

firearm within the meaning of § 924(c)(1) and that the use of a firearm is "in relation to" a drug

trafficking offense where the gun is an integral part of the transaction.  *Id.* at 237-38 (citations

omitted);[11] *see also United States v. Cox*, 324 F.3d 77, 83 (2d Cir. 2003) ("it is settled that one

who *tenders* a firearm as barter for drugs is 'using' it within the meaning of Section 924(c)(1)")

Petitioner admitted in his Plea Agreement that he met with a confidential informant in

Dewitt, New York, on September 17, 1998, and that he, along with his co-defendant Matthew

Sugamele, sold a .38 caliber revolver, ammunition and one-quarter pound of marijuana to the

confidential informant in exchange for $540.00 in U.S. currency.  *See* Plea Agreement at 7; *see*

*also* Plea Tr. at 8.  Thus, it is clear that Petitioner could have properly been prosecuted on the

§ 924(c) charge.  *See Cox*, 324 F.3d at 83; *see, e.g.*, *United States v. Moore*, 54 F.3d 92, 101 (2d

Cir. 1995) (denying appellate claim challenging sufficiency of evidence as to § 924(c) conviction;

"gun facilitated the drug distribution conspiracy because it was used as compensation for drug

services rendered"); *Bakic*, 971 F. Supp. at 701 (denying § 2255 motion challenging § 924(c)

---

[11] Subsequent to *Smith*, the Supreme Court decided *Bailey v. United States*, 516 U.S. 137
(1995).  In that case, the Supreme Court held that the mere placement of a firearm for
protection at or near the site of a drug crime or its proceeds was not sufficient to support a
conviction for "use" under the active-employment reading of that word.  *See Bailey*, 516
U.S. at 144.  However, as then-Chief Judge Thomas J. McAvoy of this District observed, the
Court's reasoning in *Bailey* did not overrule *Smith*.  To the contrary, the *Bailey* Court
explicitly noted that its interpretation "'[was] not inconsistent with *Smith*.'"  *Bakic v. United*
*States*, 971 F. Supp. 697, 701 (N.D.N.Y. 1997) (quoting *Bailey*, 516 U.S. at ___, 116 S. Ct.
at 508).

conviction; agreement to trade twenty rifles, two cases of ammunition, and $2,250 cash in exchange for one-half pound of methamphetamine and one-half pound of cocaine supported that conviction); *see generally Smith*, 508 U.S. at 237-38.

Moreover, as noted above, in negotiating the terms of the Plea Agreement with the Government, Mr. Secular fully explored the issue of whether the Government would abandon its request that Petitioner plead guilty to the § 924(c) count. *See* Action No. 03-CV-691, Dkt. No. 21. When AUSA Katko informed Mr. Secular that the Government insisted that a plea agreement include a guilty plea to the § 924(c) charge, *see* Action No. 03-CV-691, Dkt. No. 22, counsel conferred with Petitioner who ultimately agreed to plead guilty to the firearms charge. *See* Affidavit of David Secular, Esq., dated June 17, 2004, at ¶ 8 (reproduced as attachment to Resp. Mem.). Thus, the record clearly establishes that Mr. Secular pursued, albeit unsuccessfully, the possibility of Petitioner entering into a Plea Agreement concerning the Indictment without his client pleading guilty to the § 924(c) charge. Since Petitioner has not established that counsel's actions relating to those negotiations were objectively unreasonable, the Court denies this aspect of his Amended Motion to Vacate. *See Fernandez v. United States*, No. 05 Civ. 1843, 02CRIM47903, 2005 WL 700961, *1-*2 (S.D.N.Y. Mar. 28, 2005) (denying ineffective assistance claim asserted in § 2255 action; facts at plea colloquy established that the petitioner was guilty of committing 18 U.S.C. § 924(c) crime to which she pled guilty); *see*, *e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985) (criminal defendant represented by counsel possesses right to make a reasonably informed decision to accept or reject a plea offer); *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) ("'[a] defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable'" (quotation omitted));

*Gordon*, 156 F.3d at 379-80 (criminal defendants have right to effective assistance of counsel during the course of plea negotiations).

As to Petitioner's claim that his attorney failed to negotiate a binding plea agreement with the Government in the underlying criminal matter, *see* Amended Motion to Vacate, Ground Five, the Court finds this claim to be specious in light of the fact that he pled guilty before this Court pursuant to an executed Plea Agreement that was binding on both him and the Government.  *See* Action No. 00-CR-373, Dkt. No. 37; *see also* Plea Tr. at 4-5 (Court discussing with Petitioner the Plea Agreement he executed and pursuant to which he intended to enter guilty plea).

Accordingly, the Court concludes that this theory does not afford any basis for the relief he seeks herein.

### c. Diminished Capacity

In a portion of his fifth ground for relief, as well as the sixth ground for relief, in his Amended Motion to Vacate, Petitioner argues that counsel improperly failed to present evidence of Petitioner's diminished capacity to the Court.  *See* Amended Motion to Vacate, Grounds Five, Six.

Initially, this Court notes that it is not entirely clear whether Petitioner now claims that his alleged diminished capacity should invalidate his guilty plea in its entirety because his plea was not knowingly and intelligently made, *see* Amended Motion to Vacate, Ground Six, or whether Petitioner is alleging that his retained counsel failed to argue Petitioner's diminished capacity as a basis for a downward departure in Petitioner's sentence, *see* Amended Motion to Vacate, Ground Five.  Therefore, this Court will construe this claim liberally as asserting both of these grounds.

18

***(1) Capacity to Plead Guilty to Charges in Indictment***

In opposing this aspect of Petitioner's Amended Motion to Vacate, Respondent has provided the Court with a second affidavit that Petitioner's assigned counsel executed in which he stated that "[a]t no point during [his] representation of [Petitioner] did [counsel] come to believe that [Petitioner] was operating under a mental disease or defect that rendered him incapable of understanding the allegations and to decide what was the best course of action to take." *See* Action No. 03-CV-691, Dkt. No. 29, Affidavit of David Secular, Esq., dated April 12, 2005, at ¶ 3.  Mr. Secular further declared in that affidavit that he believed that Petitioner "was able to fully understand the nature and consequences of the proceedings against him and was able to assist [counsel] in evaluating any defenses that [Petitioner] may have [had]." *Id.*

Petitioner has not presented any evidence which disputes Mr. Secular's testimony regarding Petitioner's ability to understand the nature and consequences of the proceedings against him in the underlying criminal matter.  Additionally, Petitioner's responses to this Court's questions throughout the hearing in which he pled guilty to the above-referenced charges did not suggest, in any way, that Petitioner labored under a diminished capacity.  *See* Plea Tr. at 2-12. Since Petitioner has not established that at the time he pled guilty he suffered from any mental disease or defect which resulted in any diminished capacity, he has not demonstrated that his assigned counsel wrongfully failed to present evidence of Petitioner's diminished capacity to the Court during the criminal proceeding below.

19

### *(2) Failure to Seek Downward Adjustment Due to Diminished Capacity*

Alternatively, if the Court considers this claim to allege that Petitioner's retained counsel wrongfully failed to seek a downward adjustment at sentencing due to Petitioner's diminished capacity, *see, e.g.*, Amended Motion to Vacate, Ground Five, the Court notes that Section 5K2.13, a Policy Statement of the Guidelines, provides, in pertinent part, that "[a] downward departure [under the Guidelines] may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. . . ." U.S.S.G. § 5K2.13.  To warrant a downward departure on this basis, a party must establish the following: (1) significantly reduced mental capacity that was not the result of the voluntary use of drugs and (2) a causal link between that reduced capacity and the party's actions in committing the charged offense.  *See Simmons v. United States*, Nos. 5:04 CV 539, 5:05 CR 318, 2005 WL 2033473, *5 (N.D.N.Y. Aug. 22, 2005) (quotation and other citation omitted).

Petitioner has not established that at the time he committed the offenses to which he pled guilty he was suffering from a significantly reduced mental capacity.  Therefore, it was not objectively unreasonable for his attorney to have refrained from filing a motion seeking a downward departure based upon that reason at the time of Petitioner's sentencing.  Accordingly, the Court concludes that Petitioner is not entitled to the relief he seeks on this theory.

### *d. Right to Appeal*

Petitioner next faults counsel for failing to advise him of his purported right to file an

appeal with the Second Circuit.[12]  *See* Amended Motion to Vacate, Ground Seven.  However, this argument appears to overlook the fact that Petitioner waived his right to appeal any sentence of imprisonment of 180 months or less.  *See* Plea Agreement at ¶ 14.  As noted above, this Court specifically referenced that appellate waiver during the plea colloquy, *see* Plea Tr. at 9, as did Petitioner's retained counsel at Petitioner's sentencing.  *See* Sentencing Tr. at 18.  Since that appellate waiver was valid, Petitioner is precluded from now claiming that counsel was ineffective in failing to advise him of any purported right to pursue an appeal.  *See Colon v. United States,* Nos. 05 Civ. 2690, 04 CRIM. 0014, 2005 WL 2088412, *2 (S.D.N.Y. Aug. 29, 2005) ("Petitioner's claim that counsel's assistance was ineffective because he failed to file an appeal notwithstanding a valid waiver of the right to appeal is frivolous and is rejected"); *see also Pianello v. United States,* Nos. 05CIV5686, 04CRIM0014, 2005 WL 1773681, *3 (S.D.N.Y. July 26, 2005); *Defex v. United States,* No. 97-CV-1891, 1998 WL 812572, *4 (E.D.N.Y. May 19, 1998) (claim that attorney wrongfully failed to advise the petitioner of his right to appeal "baseless" where he waived any appellate rights and where the petitioner was reminded during plea allocution that he was foregoing his right to appeal under terms of plea agreement); *see, e.g., Murgas v. United States,* No. 99-CV-1723, 2002 WL 553462, *4 (N.D.N.Y. Apr. 10, 2002) (failure to file a notice of appeal cannot be seen as objectively unreasonable in light of the petitioner's express agreement to waive his right to appeal (citation omitted)).

Thus, neither assigned nor retained counsel acted in an objectively unreasonable manner in failing to advise Petitioner of his claimed right to appeal because he had explicitly waived that right.  Furthermore, because his appellate waiver was fully enforceable, Petitioner could not

---

[12] Petitioner appears to assert this claim against both his assigned and his retained counsel.

demonstrate any prejudice attributable to counsels' allegedly wrongful conduct.  Accordingly, the Court concludes that this theory does not afford Petitioner any basis for the relief he seeks herein.

### e. Sentencing Memorandum and Hearing

In his eighth ground for relief, Petitioner argues that his retained counsel did not adequately represent him at sentencing.  Specifically, he contends that the sentencing memorandum that Mr. Scharf filed contained "aggravating and false facts," and that, at sentencing, counsel "managed to further Dehumanize the Petitioner, through both derogatory information [and] with false and inflammatory facts pertinent to the Petitioner and his Family." *See* Amended Motion to Vacate at (attached) 7 (typeface in original).

Respondent argues that this aspect of Petitioner's Amended Motion to Vacate "is devoid of specific facts to support the claim," thereby rendering it "difficult to ascertain the actual basis for the claim and how he was harmed by it."  *See* Resp. Mem. at 31.  Alternatively, Respondent contends that the claim is without substance.  *See id.* at 31-32.

Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, provides, in pertinent part, that motions to vacate shall "specify all the grounds for relief available to the moving party; state the facts supporting each ground . . . ."  Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Petitioner has clearly failed to comply with the foregoing Rule.  For example, although he alleges that retained counsel presented "false facts" in his sentencing memorandum, *see* Amended Motion to Vacate at (attached) 7, Petitioner has wholly failed to specify which of the numerous statements contained in that memorandum were false or misleading in any way.  Nor does Petitioner provide the factual

basis for this claim in his Traverse.

A petitioner bears the burden of proving that he is entitled to relief under § 2255.  *See Mittal v. United States*, Nos. 02 Civ. 8449, 98 CR. 1302, 2005 WL 2036023, *7 (S.D.N.Y. Aug. 24, 2005) (citation omitted); *Parsons v. United States*, 919 F. Supp. 86, 88-89 (N.D.N.Y. 1996) (citation omitted).  Petitioner's failure to provide specific facts supporting this aspect of his Amended Motion to Vacate represents a failure on his part to satisfy this burden.  Thus, this Court could deny this portion of Petitioner's application on this basis alone.  *See, e.g.*, *Barnett v. United States*, 870 F. Supp. 1197, 1201 (S.D.N.Y. 1994) (court should deny motion to vacate where the petitioner failed to state ground on which he sought relief and failed to state facts substantiating such claim).  However, in light of Petitioner's *pro se* status, this Court has reviewed both the sentencing memorandum that retained counsel prepared in the underlying criminal matter, together with the sentencing transcript, in an attempt to ascertain whether Petitioner might be entitled to habeas relief on this theory.

Retained counsel sought to have this Court reduce Petitioner's sentence based upon a finding that there existed "aggravating or mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration" in the formulation of the Guidelines.  *See* Action No. 00-CR-373, Dkt. No. 105 ("Sentencing Mem."), at (unnumbered) 4-5.  In support of that claim, Mr. Scharf included a detailed discussion regarding Petitioner's history of sexual abuse, mental illness, and alcohol and drug abuse.  *See id.* at (unnumbered) 6-10.  At sentencing, counsel briefly reiterated some of those same arguments in offering a possible explanation for Petitioner's criminal conduct.  *See* Sentencing Tr. at 6-8.

Since counsel sought a downward departure for Petitioner based upon the difficulties he

had experienced in his life, it was not objectively unreasonable for counsel to provide such information to this Court in support of the requested departure. *See, e.g.*, *United States v. Ruff*, 998 F. Supp. 1351, 1361-62 (M.D. Ala. 1998) (recognizing authority to grant downward departure in defendant's sentence due to his history of being victim of sexual abuse (citation omitted)); *United States v. Artim*, 944 F. Supp. 363, 366-68 (D.N.J. 1996) (discussing factors, including prior sexual abuse of perpetrator, that district courts may consider when determining whether to grant downward departure motion).

Moreover, since the "false and inflammatory facts" concerning Petitioner and his family that Mr. Scharf presented to the Court in conjunction with Petitioner's sentencing did not adversely affect the sentence that this Court imposed on him, Petitioner was not prejudiced, in any way, by the disclosures that retained counsel made to this Court regarding the foregoing. Accordingly, the Court concludes that this theory does not afford Petitioner any basis for the relief he seeks herein.

### f. Conflict of Interest

Petitioner's final theory upon which he relies to support his claim of ineffective assistance appears to assert a claim that his retained counsel labored under a conflict of interest; however, this claim is nearly incomprehensible. In support of this claim, Petitioner states that

> [c]ounsels [sic] conflict of interest is based on counsels [sic] own personal motivation, to as Mr. Scharf put it, "To Help Me, Help My Self". Counsels [sic] intention was to use my opportunity to cooperate, By [sic] having me introduced to a previous client's former associates who have criminal involvement with a Presiding Judge. Who [sic] counsel had a personal grievance with. The Governments [sic] lack of interest in my cooperation regarding this

> offer to assist the Government, was based on my previous failed
> efforts.  Therefor [sic] lead to a lack of devotion towards the
> interests of the Petitioner by, Randy Scharf.

*See* Amended Motion to Vacate at (attached) 8.

Petitioner's reply memorandum does not clarify the substance of this claim in any way.

*See, generally,* Traverse.

In opposing the present application, the Government filed Mr. Scharf's affidavit in which he addressed Petitioner's claim of ineffective assistance.  *See* Action No. 03-CV-691, Dkt. No. 26, Affidavit of Randy Scharf, dated May 24, 2004 ("Scharf Aff.").  In that affidavit, Mr. Scharf shed some light on the apparent factual basis for this aspect of Petitioner's ineffectiveness claim. Specifically, Mr. Scharf stated that

> [w]ith respect to the substance of the supporting facts, I can only
> surmise that [Petitioner] is referring to the meeting we had with
> AUSA Katko and the agents in which we brainstormed on various
> ways in which [Petitioner] might be able to continue to cooperate
> with the government.  Many different options and possibilities were
> discussed at that meeting, but no concrete plan was able to be
> reached, largely because the government did not believe that
> [Petitioner] had the desire to cooperate further with the government.
> Reference to a possibly corrupt judge was made in passing as one of
> the possible ways in which [Petitioner] might be able to help
> himself, but it was quickly realized by all parties present that it was
> too vague and speculative an idea to pursue further.

*See* Scharf Aff. at ¶ 13.

There are three levels of conflicts of interest that a court must consider in evaluating a Sixth Amendment claim alleging such a conflict: "(1) a *per se* conflict requiring automatic reversal without a showing of prejudice; (2) an actual conflict of interest that carries a presumption of prejudice; and (3) a potential conflict of interest that requires a finding of both

25

deficient performance by counsel and prejudice . . . ." *United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001) (citation omitted).

In conjunction with this action, Petitioner has not presented any evidence to support his claim that his retained counsel suffered from a *per se*, actual or potential conflict of interest. Rather, the only evidence that addresses this issue is Mr. Scharf's sworn declaration to the effect that he undertook the conduct on which this aspect of Petitioner's claim is based in an attempt to ensure that the Government filed a downward departure motion prior to sentencing.[13]  *See* Scharf Aff. at ¶ 13 (noting that he and the Government undertook the actions to which Petitioner referred to ensure that they had "do[ne] everything that we could to get [Petitioner] to help himself by cooperating further in this matter").  Petitioner has not contested the substance of Mr. Scharf's affidavit in any way or otherwise presented evidence to support his claim that his retained counsel labored under a *per se*, actual or potential conflict of interest at the time that he represented Petitioner.  Accordingly, the Court rejects this final theory upon which Petitioner bases his claim of ineffective assistance of counsel.

### 2. Disparity in Sentencing

In his second ground for relief, Petitioner argues that he and his co-defendants were found "guilty of similar conduct" and notes that his criminal history category was lower than that of his co-defendant, *see* Amended Motion to Vacate at (attached) 5; *see also* Traverse at 27-35.  He contends that, in conjunction with his sentencing, the prosecutor improperly diminished his level

---

[13] As noted above, AUSA Katko ultimately filed that application, which this Court granted at the time of Petitioner's sentencing.  *See* Action No. 00-CR-373, Dkt. No. 104; Sentencing Tr. at 14-15.

of cooperation with the Government thereby exposing him to a longer term of imprisonment. *See* Amended Motion to Vacate at (attached) 5. He argues that, as a result of the foregoing, he was wrongfully denied a downward departure identical to the one that his co-defendant received.[14] *See* Amended Motion to Vacate at (attached) 5. Petitioner contends that, if his counsel had made that downward departure application, the length of his sentence would have been reduced by twenty-four months. *See id.*; *see also* Traverse at 27-35.

Initially, this Court finds that, because Petitioner waived his right to appeal the sentence that this Court ultimately imposed on him and that appellate waiver is valid, that waiver bars his second ground for relief. However, the Court also concludes that this ground is substantively without merit.

In the underlying criminal matter, the Government moved for a three-level downward departure as to Defendant Sugamele based upon his substantial assistance to the Government, *see* Action No. 00-CR-373, Dkt. No. 97, yet it only sought a two-level downward departure based upon Petitioner's assistance to the Government. *See* Action No. 00-CR-373, Dkt. No. 104. Contrary to Petitioner's claims, however, the record establishes that there was no improper

---

[14] Petitioner did not specify whether this aspect of his Amended Motion to Vacate challenges his sentence compared with the sentence that the Court imposed on his co-Defendant Sugamele or the one that the Court imposed on his co-Defendant Kenneth Suressi, the third individual named in the Indictment along with Petitioner. *See* Amended Motion to Vacate, Ground Two. However, in his Traverse, Petitioner appears to argue that this claim relates to his co-Defendant Sugamele. *See* Traverse at 27-30. Additionally, the Government did not file any downward departure motion as to Defendant Suressi, *see* Action No. 00-CR-373, Dkt. No. 111, and this Court eventually sentenced Defendant Suressi to a prison term of 87 months, *see* Action No. 00-CR-373, Dkt. No. 113, a period of time substantially longer than the combined sentence of 46 months that Petitioner received. Thus, this Court has considered this ground as one alleging an improper sentencing disparity between Petitioner and his co-Defendant Sugamele.

disparity between the sentence that this Court imposed on his co-Defendant Sugamele and the one that this Court imposed on him.  Rather, the record reflects that Defendant Sugamele began cooperating with law enforcement agents well before Petitioner began providing such assistance to the authorities.  Specifically, in its sentencing memorandum regarding Defendant Sugamele, the Government noted that Defendant Sugamele had admitted his criminal involvement in the matter from the "outset," that he was the first individual named in the Indictment who cooperated with the Government, and that he "began cooperating with the authorities soon after his arrest." *See* Action No. 00-CR-373, Dkt. No. 97, at 3.

In sharp contrast to Defendant Sugamele's efforts, the Government noted at Petitioner's change of plea that it might not file ***any*** downward departure motion regarding Petitioner; in fact, AUSA Katko noted on the record at that proceeding that

> at this time . . . it's not clear whether [Petitioner's] done enough to have a substantial assistance [motion filed] but we're – it's my fervent hope that he pulls through and gets something to help himself and to help his sentence and so the cooperation's there – the cooperation agreement's there but it's not clear whether he's going to get it yet or not.  [To Petitioner:] Do you understand that?

*See* Plea Tr. at 9.

Petitioner then acknowledged that he understood AUSA Katko's statement regarding the fact that the Government might not file a substantial assistance motion on Petitioner's behalf due to his lack of cooperation.  *See id.*  AUSA Katko also mentioned Petitioner's lack of cooperation with the Government at Petitioner's sentencing hearing.  Specifically, the prosecutor noted at that time that, although Petitioner had been afforded "every opportunity in the world to cooperate," his

28

cooperation with the Government had not "pan[ned] out." *See* Sentencing Tr. at 12.[15]  Thus, it is

clear that the "sentencing disparity" about which Petitioner now complains was not improper in

any way.  *See, e.g. United States v. Featherstone*, No. 86 CR. 861, 1988 WL 142472, *3

(S.D.N.Y. Dec. 27, 1988) (noting that "extent, nature and timing" of criminal defendant's

cooperation properly resulted in the petitioner receiving sentence higher than that of co-

defendants in Indictment).

Petitioner has not offered any evidence, in either his Amended Motion to Vacate or in his

Traverse, to establish that his level of cooperation was not adequately reflected in the downward

departure motion that Respondent filed.  Accordingly, the Court denies Petitioner's second ground

for relief on the merits.


### 3. Failure to Take Mitigating Factors Into Consideration

Petitioner next argues that this Court failed to consider the "unique constellation of

mitigating factors" that existed with respect to him in fashioning his sentence.  *See* Amended

Motion to Vacate, Ground Three.  In support of this claim, Petitioner contends that (1) his

criminal conduct was "aberrant," (2) he possessed a defense of "imperfect/progressive

entrapment" to the charges, and (3) he played a "mitigating role" in the offense.  *See id.*

This Court finds that not only does Petitioner's appellate waiver bar his third ground in

support of his Amended Motion to Vacate but also this ground for relief is without merit.

In the Sentencing Memorandum that he filed on behalf of Petitioner, retained counsel

---

[15] AUSA Katko opined that Petitioner's lack of cooperation through that point in time
appeared to the Government to be "a pattern of [Petitioner's].  He doesn't realize the severity
of the problems until it is too late . . . ."  *See* Sentencing Tr. at 12.

argued that "the unique constellation of mitigating factors," including Petitioner's diminished

capacity, the fact that Petitioner's criminal conduct was "truly aberrant when viewed in the context

of his entire life," and his physical vulnerability should he be sent to prison warranted a

downward departure in Petitioner's sentence.  *See* Sentencing Mem. at (unnumbered) 5-11.  This

Court reviewed that submission prior to pronouncing its sentence on Petitioner.  *See, e.g.*,

Sentencing Tr. at 3.  Thus, the portion of Petitioner's third ground for relief that argues that this

Court did not consider the aberrant nature of his crime is fundamentally flawed.

   Next, although it appears that district courts in this Circuit may properly consider an

"imperfect entrapment" argument as a basis for a downward departure motion, *see United States*

*v. Bala*, 236 F.3d 87, 91-93 (2d Cir. 2000), a departure on such a ground is only warranted where

the defendant establishes that his criminal conduct was the result of "aggressive encouragement of

wrongdoing" on the part of the Government sufficient to "remove [the defendant's] case from the

'heartland of the applicable Guideline.'"  *Bala*, 236 F.3d at 92 (quoting *United States v.*

*Bonnet-Grullon* 212 F.3d 692, 700 (2d Cir. 2000)).  Neither the factual basis for the plea

discussed in Petitioner's Plea Agreement nor the basis for the plea placed on the record on the date

that he pled guilty to Counts One and Three in the Indictment, afforded any basis for this Court to

properly consider – much less grant – a downward departure in Petitioner's sentence based upon

an imperfect entrapment defense.  *See*, *e.g.*, Plea Agreement at 6-8; Plea Tr. at 8.

   With respect to Petitioner's claim that this Court improperly failed to downwardly depart

in his sentence pursuant to U.S.S.G. § 3B1.2 due to the minor role he purportedly played in the

subject offenses,[16] the Court finds that the facts that Petitioner admitted in his Plea Agreement reveal that a downward adjustment in his sentence under this provision of the Guidelines would have been inappropriate.  Specifically, under his Plea Agreement, Petitioner admitted that on September 17, 1998, he drove himself and co-Defendant Sugamele to a local restaurant to sell marijuana and a handgun to an individual who proved to be a confidential informant.  *See* Plea Agreement at 6-7.  Additionally, Petitioner admitted that, after co-Defendant Sugamele sold the confidential informant $350.00 worth of marijuana on September 25, 1998, Petitioner placed a call to that individual and encouraged him to "call [Petitioner] if he need[ed] anything else."  *See id.* at 7-8.  Finally, Petitioner and his co-Defendant Sugamele met with the confidential informant on October 9, 2000, and again on October 22, 2000, and sold him illegal narcotics worth approximately $3,000.00.  *See id.* at 8.

Courts have applied a "minor role" adjustment under the Guidelines to "any participant who is less culpable than most other participants, but whose role could not be described as minimal."  U.S.S.G. § 3B1.2, cmt. n. 3.  In addition, courts have found such an adjustment appropriate if the defendant is "substantially less culpable than the average participant."  *Id.*; *Carpenter*, 252 F.3d at 234-35.  In this vein, the Second Circuit "ha[s] held that a defendant may not receive a minor role adjustment solely because [he] 'played a lesser role than h[is] co-conspirators[;] to be eligible for a reduction, the defendant's conduct must be "minor" . . . as

---

[16] Under U.S.S.G. § 3B1.2, entitled "Mitigating Role," a district court may, based upon a defendant's role in the offense, decrease his offense level by four levels where the defendant was a minimal participant in any criminal activity, *see* U.S.S.G. § 3B1.2(a); by two levels if the defendant was a minor participant in the criminal activity, *see* U.S.S.G. § 3B1.2(b); or by three levels "[i]n cases falling between" the foregoing categories.  *See* U.S.S.G. § 3B1.2; *see also United States v. Carpenter*, 252 F.3d 230, 234-35 (2d Cir. 2001) (citations omitted).

compared to the average participant in such a crime.'"  *United States v. Castano*, 234 F.3d 111, 113 (2d Cir. 2000) (quotation omitted).

Petitioner's role in the subject criminal offenses, as he admitted in his Plea Agreement, establishes that it would have been inappropriate for this Court to reduce his offense level based on his alleged mitigating role in the offense.  Accordingly, in light of the foregoing, the Court denies Petitioner's third ground for relief.

### 4. Petitioner's Participation in the BOP's Drug Treatment Program

In his fourth ground for relief, Petitioner claims that the Court should correct his sentence because, at the time of sentencing, it was under the mistaken impression that he would be eligible for early release upon his successful completion of the BOP's Drug Treatment Program.  *See* Amended Motion to Vacate at (attached) 6.  Petitioner argues that, because the BOP subsequently informed him that he was not eligible to participate in that program due to his firearms conviction, this Court should correct his sentence because of its "apparent misunderstanding" concerning BOP regulations relating to its Drug Treatment Program.  *See id.*

Respondent argues that the Court's statements regarding the BOP's Drug Treatment Program at the time of Petitioner's sentencing constituted a mere recommendation that Petitioner participate in that program.  *See* Resp. Mem. at 23.  Moreover, Respondent contends that, because this Court did not rely upon the statement it made regarding Petitioner's participation in that program in fashioning Petitioner's sentence, the Court should deny this aspect of Petitioner's Amended Motion to Vacate.  *See id.*  In support of its position, Respondent relies principally upon the Supreme Court's decision in *United States v. Addonizio*, 442 U.S. 178 (1979).  *See* Resp.

Mem. at 23-26.[17]

Although Petitioner's waiver of his right to appeal bars this ground for the relief he seeks, the Court notes that this ground is also without substance. Specifically, the record reflects that, *after* imposing sentence on Petitioner, this Court stated that it was

> going to recommend that [Petitioner] be allowed to participate in the Bureau of Prisons Comprehensive Residential Drug Treatment Program.
>
> If you are accepted into that program, and if you complete it successfully, you will be able to reduce your time further in prison, but more importantly, you will be developing some lifelong skills to deal with substance and alcohol and other types of drug abuse as well as some skills to deal with making good choices in life.

*See* Sentencing Tr. at 15-16.

This Court is well aware that the ultimate decision as to whether an inmate will be accepted into the BOP's Drug Treatment Program rests with the BOP. Although the Court encouraged Petitioner to apply for admission into that program, it is clear that the Court merely *recommended* that Petitioner *be allowed* to participate in that program, *after* it imposed sentence on Petitioner.[18] *See* Sentencing Tr. at 15. Thus, this Court clearly indicated at Petitioner's sentencing that his successful completion of the BOP's program – and any potential reduction in his prison term related to same – was neither guaranteed nor a condition of his sentence. To the

---

[17] In *Addonizio*, the Supreme Court held that a party may not properly bring an action pursuant to 28 U.S.C. § 2255 if the claimed sentencing error was "based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *Addonizio*, 442 U.S. at 187.

[18] The Court notes that the sentence that it imposed on Petitioner reflected a substantial downward departure from the imprisonment range of 130 months to 147 months to which Petitioner was subject in light of his convictions. *Compare* Sentencing Tr. at 14 *with* Revised PSR at ¶ 71.

contrary, this Court merely recommended that Petitioner consider applying for admission into the BOP's Drug Treatment Program primarily because of the life skills he might obtain as a result of his successful completion of that program.  *See id.*

The Court clearly did not base Petitioner's sentence, in any way, on an assumption that he would be accepted into the BOP's Drug Treatment Program or that he would necessarily successfully complete that program and thereby reduce his sentence.  Thus, even considering the substance of Petitioner's fourth ground for relief, the Court finds it to be without merit.  *See*, *e.g.*, *Alvarez v. Scully*, No. 91 CIV. 6651, 1993 WL 15455, *8 (S.D.N.Y. Jan. 11, 1993) (habeas relief unavailable where "there is no indication that [court] relied on misinformation in the sentencing procedure"), *aff'd without op.*, 23 F.3d 397 (2d Cir. 1994); *Cf. Moore v. Scully*, 956 F. Supp. 1139, 1149 (S.D.N.Y. 1997) (court's mistaken belief at sentencing regarding the defendant's involvement in prior crime did not entitle the petitioner to habeas relief, the information "clearly was not material, and the Court's mention of it was harmless").  Accordingly, the Court denies Petitioner's fourth ground for relief

### 5. Validity of Plea

In his fifth ground for relief, Petitioner argues that his guilty plea was both involuntary and not knowingly made.  *See* Amended Motion to Vacate at (attached) 6.  Specifically, he contends that his plea is invalid because (1) it was based upon "Counsel's misinformation" and because (2) he did not violate § 924(c).  *See id.*  Although this claim appears to be rooted in the ineffective assistance claim already discussed, the Second Circuit has emphasized that courts within this Circuit are to construe a *pro se* litigant's papers liberally.  *See Marmolejo v. United States*, 196

F.3d 377, 378 (2d Cir. 1999) (per curiam) (construing application for certificate of appealability filed in § 2255 application as a notice of appeal); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) ("Just as *pro se* complaints 'must be liberally construed' . . . a district court must review a *pro se* petition for collateral relief 'with a lenient eye, allowing borderline cases to proceed'" (internal quotations and other citations and footnote omitted)); *see Parke v. United States*, Nos. 5:97-CV-526, 92 CR 035, 2004 WL 437464, *2 (N.D.N.Y. Feb. 17, 2004) ("this court must afford [petitioner], as a *pro se* litigant, a liberal reading of his papers, and interpret them 'to raise the strongest arguments that they suggest'" (quotation omitted)). Therefore, in addition to considering this claim as an argument in support of his ground alleging ineffective assistance, this Court will also construe this claim for relief as one challenging the validity of Petitioner's guilty plea.

To the extent that Petitioner's appellate waiver and/or his failure to assert this claim in a direct appeal of his conviction do not procedurally bar this ground, the Court finds that the transcript of Petitioner's change of plea belies any claim that he did not knowingly, voluntarily and intelligently enter his guilty plea to Counts One and Three of the Indictment. *See* Plea Tr. at 2-11. At that hearing, Petitioner stated that he (1) had thoroughly reviewed the Plea Agreement with his attorney, (2) understood everything contained in that agreement, and (3) had no questions whatsoever about anything contained in the Plea Agreement. *See* Plea Tr. at 5. The answers that Petitioner provided to the Court at that proceeding did not suggest, in any way, that his guilty plea was anything other than one "made voluntarily after proper advice and with full understanding of the consequences." *E.g.*, *Kercheval v. United States*, 274 U.S. 220, 223 (1927); *see also Pujols v. United States*, No. 03 Civ. 1474, 2004 WL 1418024, *2 (S.D.N.Y. June 23, 2004) (quotation and

other citation omitted).

Since Petitioner has not presented any evidence to support his claim challenging the validity of his guilty plea, this Court concludes that such a claim is without substance. Accordingly, the Court also denies this portion of Petitioner's fifth ground on the merits.

## III. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the Clerk of the Court amend the Court's Docket in this case to reflect Petitioner's new address: Syracuse Pavilion, 701 Erie Boulevard East, Syracuse, New York 13210; and the Court further

**ORDERS** that Petitioner's request to amend his Amended Motion to Vacate, *see* Action No. 03-CV-691, Dkt. No. 30, is **DENIED**; and the Court further

**ORDERS** that Petitioner's Amended Motion to Vacate, *see* Action No. 03-CV-691, Dkt. No. 15, is **DENIED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

**IT IS SO ORDERED.**

Dated: November 25, 2005
       Syracuse, New York

                               _____
                               Frederick J. Scullin, Jr.
                               Chief United States District Court Judge